Harold J. **WHITE**, Plaintiff,

v.

Robert B. **GIFIS** and Earl Fainblait,
Defendants,
and
Farmers Mutual Automobile Insurance
Company of Madison, Wisconsin,
Garnishee.

Civ. A. No. 5803.

United States District Court
D. Minnesota,
Fourth Division.

Jan. 30, 1959.

Chester D. Johnson, Minneapolis, Minn., for plaintiff.

Frederick P. Bradford and Ralph T. Lilly, St. Paul, Minn., for the Farmers Mutual Automobile Insurance Company, Garnishee.

NORDBYE, Chief Judge.

This cause came before the undersigned on a stipulation of the parties that the issues between them may be submitted on the record in the Hennepin County District Court entitled "Harold J. White v. Robert B. Gifis and Earl Fainblait, No. 509849."

The facts briefly stated appear to be about as follows: Robert B. Gifis in October, 1954, was engaged in the business of purchasing cars in Minnesota and selling them in California. He procured drivers in Minnesota to drive his cars to that State. The drivers were usually individuals who found that driving an automobile to California was the cheapest and most desirable way of getting there. In response to an advertisement placed in the newspapers by Gifis to procure drivers, one Earl Fainblait made an arrangement with Gifis to drive a 1954 Cadillac owned by Gifis to California. He had a friend by the name of Harold J. White, the plaintiff. They had planned to go to California together, and when Fainblait made his arrangement with Gifis to drive the 1954 Cadillac to California, it was agreed that White should accompany him. Gifis was agreeable to White's accompanying Fainblait and welcomed the presence of two drivers as a safety factor. The agreement between Gifis and Fainblait was that Gifis would furnish the automobile, pay for the oil, major repairs and insurance. Fainblait was to pay for the gasoline and minor repairs. Fainblait and White agreed independently that

they would divide the expenses incurred in driving West.

Gifis recommended a route to be taken and instructed Fainblait as to the speed to be driven, particularly during the early mileage of the car. Fainblait and White had agreed between themselves to change off in the driving of the car. The decision as to who and when either one should drive the car was a matter left to their discretion. Moreover, the exact route to be followed in transporting the car to California was discretionary with them. Gifis merely suggested the most appropriate route.

Fainblait and White left Minneapolis in the Cadillac car on October 25, 1954. Fainblait was driving. He had not relinquished control of the wheel at all before a head-on collision occurred at Sheldon, Iowa. White was injured in the accident and later brought suit against Fainblait and Gifis for damages. Farmers Mutual Automobile Insurance Company (hereinafter called Farmers or the Insurance Company), defended the suit, but did not admit liability under the policy.

White procured a judgment in State Court against Gifis and Fainblait in the amount of $8,335. The jury also determined in answer to a special interrogatory that Fainblait and White were not engaged in a joint enterprise at the time of the accident. After the trial, the defendants moved for a new trial on the ground that the trial court erred when it refused to submit to the jury the question of whether or not White was a guest under the Iowa Guest Statute, I.C.A. § 321.494. The motion was denied and no appeal has been taken. The Insurance Company refused to pay the judgment and plaintiff then garnished it in State Court. The Insurance Company removed the action to this Court. It refused to pay the judgment because of an alleged policy defense; it asserted that White was an employee of Gifis. The exclusion provisions of the policy relied upon state:

"This policy does not apply:

\*  \*  \*  \*  \*  \*

"(d) under coverages A and C, [bodily injury and medical payments] to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment of the insured."

In addition, under the definition of an insured, the policy stated:

"With respect to the insurance under coverages A, B, and D the unqualified word 'insured' includes the named insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this policy, and (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The policy does not apply:

"(a) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the business of such employer; \*  \*  \*."

It appears that the case in State Court was submitted to the jury upon the theory that Fainblait was an agent of Gifis. The finding of the jury in that respect was the basis for the liability. The Insurance Company urges that, inasmuch as there was no joint venture between White and Fainblait as found by the jury in answer to the special interrogatory, these two men must have been employees of Gifis. But this conclusion does not necessarily follow. And in passing it may be noted that, even though the jury had found a joint enterprise to have existed between these two drivers, such a finding would not mean

that the negligence of one joint entrepeneur is attributed to the other. The weight of authority is that a driver is liable to his passenger for negligence even though they are engaged in a joint enterprise. See Berlin v. Koblas, 1931, 183 Minn. 278, 236 N.W. 307, 308. See also Prosser on Torts, 366, 367, 2d Ed., and authorities cited therein.

■ Although the trial court did not determine whether White or Fainblait was an employee of Gifis, it did determine that, under the Iowa Guest Statute, White was a passenger for hire. This ruling is, of course, inconsistent with any view that Fainblait was an employee of Gifis. But, in any event, whether the relationship of employer and employee existed between Gifis and White, is a matter that this Court must determine in this proceeding.

All parties agree that the construction of the contract between Gifis and Fainblait is governed by the Minnesota law. At the outset, it seems too clear for any extended comment that White was not an employee of Fainblait. They both had agreed to share the expenses to California and neither was subservient to the other in carrying out that arrangement. The decisive feature of the master and servant relationship is the "right to control" which rests in the master, the employer or the principal over his employee. Wicklund v. North Star Timber Company, 1939, 205 Minn. 595, 287 N.W. 7, 12. It is true that the Minnesota Supreme Court has found in various instances that the master and servant relationship was present where control or the right to control as a practical matter was slight. Frankle v. Twedt, 1951, 234 Minn. 42, 47 N.W.2d 482; Tschida v. Dorle, 1952, 235 Minn. 461, 51 N.W.2d 561. However, we are dealing with the term "employee" as used in an insurance contract and the words of an insurance contract must generally be given the meaning that they ordinarily convey to the popular mind. Tomlyanovich v. Tomlyanovich, 1953, 239 Minn. 250, 58 N.W.2d 855, 50 A.L.R.2d 108. Moreover, if any ambiguity exists in the policy, the ambiguity is to be resolved in favor of the insured. Youghiogheny & Ohio Coal Co. v. Employers' Liability Assur. Corp., D.C., 114 F.Supp. 472, affirmed 8 Cir., 214 F.2d 418.

After due consideration of all the circumstances, it seems evident that neither White nor Fainblait in the general accepted meaning of the term "employee" was in that relationship with Gifis when this accident occurred. The right of control existing in Gifis was substantially nil. Conditions of the weather, the roads, or other circumstances en route undoubtedly gave these men the right to select their own itinerary. They did not apply to Gifis for a job; they simply wanted transportation to California, and White contracted with Gifis to transport his car to that destination for the consideration mentioned. Certainly, they were not employees in the sense that they had the benefit of workmen's compensation or that Gifis would pay taxes upon any money or consideration that they earned. We do not have the intention of Gifis and the Insurance Company at the time the policy was issued. But certainly the means that Gifis employed in getting his automobiles to California belies any intent on his part, at least, to create an employer-employee relationship. He stated in his testimony that the general means of getting his cars to California was to advertise in the paper for people going to California, and who would utilize the car as a means of transportation. The Court is clear that, under the circumstances disclosed in the record, the word "employee" as used in the insurance policy should not be accorded such a broad scope that it conflicts with the ordinary and usual concept of that term. Realistically, these men were nothing more than independent contractors who agreed to transport an automobile from Minnesota to California for a named consideration. The Court has considered Sheppard v. Hall, Okl. 1955, 282 P.2d 212, but does not believe that the rationale of that case should be applied here.

It follows from the foregoing that plaintiff is entitled to judgment as prayed for in the complaint. Findings of fact and conclusions of law consistent herewith may be presented upon ten days notice.